[Crim. No. 1191. First Appellate District, Division One.—October 15, 1924.]

## THE PEOPLE, Respondent, v. GERARD E. DE VRIES, Appellant.

[1] CRIMINAL LAW—VIOLATION OF MOTOR VEHICLE ACT—ABANDONMENT OF VICTIM—KNOWLEDGE—EVIDENCE.—In this prosecution for a violation of section 141 of the Motor Vehicle Act, although both defendant and his wife denied that they knew that they had struck anyone, and there was no direct testimony to disprove their assertion, when all the surrounding circumstances were considered it was inconceivable that defendant could have been unaware of the fact of the collision, and the jury was warranted in finding that defendant, knowing that his automobile had come into contact with a human being, fled from the scene without stopping to render assistance.

[2] ID.—PRODUCTION OF INJURED PERSON AS WITNESS—MISCONDUCT. In such prosecution, the district attorney had a right to produce the injured person in order that he might be questioned; and the

fact that his condition necessitated that he be carried into court upon a stretcher afforded no ground for the contention that this was done for the purpose of arousing the passion and prejudice of the jury or that it constituted misconduct.

[3] Id.—Offer of Settlement of Case—Improper Question—Misconduct.—In such prosecution, conceding that it was improper for the district attorney to ask the injured person (while a witness) whether or not the defendant had offered him a specified sum of money in settlement of the case, the mere mistake in asking such question cannot be regarded as misconduct.

[4] Id.—Duty to Stop and Render Aid.—Cumulative Instructions. In such prosecution, it was not error to refuse certain instructions requested by defendant, and which had to do with the duty, imposed by the Motor Vehicle Act upon one who, while driving an automobile, collides with a human being, to stop and render aid to such person, where the jury was fully and fairly instructed upon the point.

[5] Id.—Reckless Driving—Excessive Speed—Irrelevant Instruction.—In a prosecution for a violation of section 141 of the Motor Vehicle Act, it is not error to refuse an instruction requested by defendant dealing with the question of reckless driving and excessive speed.

(1) 28 Cyc., p. 50.   (2) 16 C. J., p. 892, sec. 2228 (Anno.).   (3) 16 C. J., p. 893, sec. 2229.   (4) 16 C. J., p. 1063, sec. 2605.   (5) 16 C. J., p. 1042, sec. 2483.

APPEAL from a judgment of the Superior Court of Alameda County. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wallace & Ames for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

TYLER, P. J.—Appellant was charged by information with the crime of felony, to wit, violation of section 141 of the Motor Vehicle Act (Stats. 1923, p. 562). He was tried, convicted, and sentenced to serve six months in the Alameda County jail. He appeals from the judgment and from the order denying his motion for a new trial.

3.   See 8 Cal. Jur. 256.

As grounds for reversal it is claimed that the verdict is contrary to the law and the evidence. It is further claimed that the district attorney was guilty of misconduct during the trial to the prejudice of appellant, and that the court erred in refusing to give certain requested instructions and likewise erred in the admission of certain evidence.

The record discloses the following facts: On the nineteenth day of January, 1924, between the hours of 8 and 9 o'clock in the evening, defendant, accompanied by his wife, who occupied the front seat with him, was driving his automobile along San Pablo Avenue in a southerly direction toward the city of Oakland. He had left his home in Berkeley with the intention of taking the ferry to San Francisco to attend the "Wampus Ball," an entertainment given by certain moving picture concerns. The evening was dark, and the defendant before leaving his home had turned on all of the lights of his machine. As he proceeded along his way down San Pablo Avenue he was followed by two automobiles. One of these was immediately in the rear of defendant's car and some thirty feet distant therefrom. As the cars approached the intersection of Channing Way and San Pablo Avenue they were traveling at a speed variously estimated at from thirty to thirty-five miles an hour. At this point the occupants of one of the cars following defendant observed what to them looked like a man falling from the machine driven by defendant. Other evidence showed that one Roscoe Williams was crossing the street at this particular moment and was struck down by defendant's automobile and very seriously injured. At this moment defendant's automobile slowed down but did not stop to render aid; on the contrary, it immediately thereafter speeded up rapidly. There is testimony to show that about this time the lights of the car were extinguished. The occupants of one of the cars witnessed the collision, and its driver immediately started in pursuit of defendant's automobile, honking his horn intermittently to attract defendant's attention. During the pursuit both automobiles traveled at a rate of speed estimated at from forty-five to fifty miles an hour. When they had proceeded about a mile and a half defendant turned into a side street and stopped. There is testimony to show that at this time his tail light was extinguished. On being approached by his

pursuer and charged with having driven down a man both defendant and his wife disclaimed any knowledge of the fact. At that time an examination of defendant's car showed a dent in the left front fender and also that the left headlight was broken and hanging by a wire between the fender and the hood, where there was considerable broken glass. On these facts being called to the attention of the defendant and his wife the latter attempted to account for them by stating that the damage was caused by her striking a pole that morning. Defendant was then informed by his pursuer that he would report the matter to the police. The parties then separated and defendant and his wife drove away. There is testimony to show that thereafter they proceeded to their home, where they talked the matter over between themselves and thereafter appeared at the police station at Berkeley. On being interrogated by the officer in charge the defendant's wife again attempted to account for the damaged condition of the car by repeating the explanation given above. Defendant was then asked to make a written statement but refused to do so and was thereafter placed under arrest.

[1] It is first claimed that the evidence is insufficient to warrant the jury in finding that the defendant, knowing that his automobile had come into collision with a human being, fled from the scene without stopping to render assistance. It is true that both defendant and his wife denied that they knew that they had struck anyone, and there is no direct testimony to disprove their assertion; but when all the facts surrounding the occurrence are considered it is inconceivable that defendant could have been unaware of the fact of the collision. The force with which the defendant's victim—a man weighing some two hundred pounds—was struck must have been very great. That it was so is evidenced by the condition of the defendant's car immediately thereafter. True, his wife declared that the damage was caused by her prior act; but when it is considered that defendant himself testified that he had turned on all his lights before leaving home, including both headlights, and that at that time they were both burning, her evidence apparently carried little if any weight with the jury. The increased rate of speed at which the defendant traveled after Williams was struck is also a significant circumstance to be considered

upon the question of his knowledge, as is also his act in turning into a side street leading away from his original destination. The only reasonable deduction which the jury could have drawn from this evidence is that defendant was aware that his automobile had come into collision with Williams. We are of opinion, therefore, that there is no merit in appellant's first contention.

[2] The appellant complains of misconduct on the part of the district attorney. The prosecution called Williams, the injured person, to prove certain facts. Owing to his helpless and enfeebled condition it was necessary for him to be brought into court upon a stretcher. Appellant argues that this was done for the purpose of arousing the passion and prejudice of the jury and that it constituted misconduct.

The district attorney had a right to produce the injured person in order that he might be questioned; and the fact that his condition necessitated that he be carried into court affords appellant no ground for complaint. He himself was responsible for the helplessness of the witness. Then, too, testimony had already been introduced relative to the severity and extent of the injuries inflicted. It was shown that Williams had suffered a concussion of the brain, lacerations of the scalp, and compound comminuted fractures of both legs, and that in all probability he would never be able to walk again. That his presence in court as a witness gave to the jury an opportunity to visualize these injuries is a matter which, while unfortunate for the defendant, gave rise to no legal prejudice, and did not render improper the exercise by the prosecuting officer of his right to produce the witness in court.

[3] One of the questions propounded to this witness by the district attorney was whether or not the defendant had offered him the sum of fifteen hundred dollars in settlement of the case. The question was objected to and the asking of it assigned as misconduct on the part of the district attorney. The evidence was received but was later stricken out and the jury directed not to consider it.

Conceding the question to have been an improper one, still it does not follow that the district attorney was guilty of misconduct in asking it. In most jurisdictions the rule that an offer of compromise is inadmissible is held not

to be applicable to criminal cases. (16 Cor. Jur., p. 635, sec. 1264). Whatever limitation there may be to this rule where doubt arises as to whether the offer was made in settlement of a civil or criminal action is a matter unnecessary here to discuss or decide. Assuming it to have been an improper question, a mere mistake by a prosecuting officer relative to a rule of evidence cannot be regarded as misconduct.

[4] Finally, the appellant complains of the failure on the part of the trial court to give some ten instructions requested by him. Most of these had to do with the duty, imposed by the terms of section 141 of the Motor Vehicle Act (under which defendant was being prosecuted), upon one who while driving an automobile collides with a human being, to stop and render aid to such person. As to this objection, it is sufficient to say that the jury were fully and fairly instructed upon the point.

[5] Another proposed instruction dealt with the question of reckless driving and excessive speed. The defendant was not charged with this offense, and the instruction was properly refused.

From an examination of the entire record, including all of the evidence, we are satisfied that no substantial right of defendant was impaired and that there has been in this case no miscarriage of justice. On the contrary, we are of the opinion that he has been very leniently dealt with.

The judgment is affirmed.

Knight, J., and St. Sure, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 11, 1924.

All the Justices concurred.