[Crim. No. 2888. Fifth Dist. Apr. 20, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD G. HAMILTON, Defendant and Appellant.

126

COUNSEL

Frank Offen, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Marjory Winston Parker and John R. Duree, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TUTTLE, J.*—After a jury trial, defendant was found to be guilty of felony hit-and-run driving (Veh. Code, § 20001), not guilty of engaging in a speed contest (Veh. Code, § 23109, subd. (a)), and not guilty of engaging in an exhibition of speed (Veh. Code, § 23109, subd. (b)). The jury was unable to reach a verdict on four counts of vehicular manslaughter (Pen. Code, § 192, subd. 3(a)).

Defendant was placed on probation, and he has appealed,[1] seeking reversal of his conviction of felony hit-and-run driving on the grounds of inconsistent verdicts and inadequate and misleading instructions.

On the evening of March 3, 1976, defendant, driving a borrowed Chevrolet and accompanied by Dorce Allen, met one Donnie O'Neal,

---

*Assigned by the Chairperson of the Judicial Council.

[1]Defendant purports to appeal from the "judgment" rendered against him. Since imposition of sentence was suspended in order to grant defendant's application for probation, no judgment initially was rendered. (*People* v. *Arguello* (1963) 59 Cal.2d 475, 476 [30 Cal.Rptr. 333, 381 P.2d 5]; *In re Phillips* (1941) 17 Cal.2d 55, 58 [109 P.2d 344, 132 A.L.R. 644].) Accordingly, defendant should have appealed from the order granting him probation. (Pen. Code, § 1237, subd. 1; *People* v. *Robinson* (1954) 43 Cal.2d 143, 145 [271 P.2d 872].) In accordance with standard practice, we treat defendant's appeal as having been taken from the order granting him probation. (*People* v. *Cook* (1975) 13 Cal.3d 663, 666-667, fn. 1, 673 [119 Cal.Rptr. 500, 532 P.2d 148]; *People* v. *Smith* (1977) 67 Cal.App.3d 638, 643, fn. 1 [136 Cal.Rptr. 764].)

Additionally, we have had the original superior court file in this case transferred to this court. That file discloses that subsequent to defendant's filing of his notice of appeal the four counts of vehicular manslaughter were dismissed upon the motion of the People. The superior court file also discloses that subsequent to the filing of his notice of appeal defendant violated his probation, the probation was revoked, judgment was pronounced and defendant was sentenced to state prison for the term prescribed by law.

driving a Javelin and accompanied by his brother. The four men in the two cars visited several bars and stopped for gasoline at a service station eight blocks (approximately one mile) from the accident scene. O'Neal left the station first, slowing down so defendant could catch up; the two cars drove west on Olive Street, side by side, with Allen conversing with O'Neal through open car windows. Officer Paul Comparan of the California Highway Patrol, who was headed eastbound on Olive, saw the Chevrolet as it was catching up with the Javelin; he thought it was speeding, so he made a U-turn and followed the two cars west on Olive. The Chevrolet was in the curb lane and the Javelin was in the outside lane.

Six blocks from the service station and two blocks from the intersection of First and Olive where the accident occurred, the two cars were seen by witness Jerry Lane crossing the intersection of Bond and Olive at fifty to sixty miles per hour, traveling side by side, and pursued by the Highway Patrol car, which was five to seven car lengths behind with red lights flashing. Other witnesses testified that as the 2 cars approached the First and Olive intersection, the Javelin was in front going from 90 to 100 miles per hour, followed by the patrol car, with the Chevrolet as much as a block or more away at the time of impact. The Javelin ran a red light and hit a car which had the right-of-way, killing four people.

Officer Comparan said that the Javelin and Chevrolet accelerated at Millbrook, midway between the service station and the accident scene, reaching speeds of over 90 miles per hour, and that 1 block from the accident scene, the Chevrolet slowed up and dropped behind. Defendant's passenger Dorce Allen, on the other hand, said the speed of the Chevrolet was from 25 to 45 miles per hour; that the Javelin "shot by real fast," after passing Millbrook, followed by the patrol car; and that the Chevrolet was left in the rear and was 1 or 2 blocks away at the time of impact. All agree that the Chevrolet reached the intersection after the accident and turned right, proceeding north on First Street. Officer Comparan stopped at the scene to render assistance; defendant did not stop and was arrested six days later.

## Inconsistent Verdicts

We first address the question of inconsistent verdicts. Defendant was convicted of violating section 20001 of the Vehicle Code which makes it a felony for the driver of any vehicle "involved in an accident" resulting in the injury or death of another person to fail to stop at the scene of the

accident and fulfill the acts required by sections 20003 and 20004 of the Vehicle Code.[2] Defendant concedes that physical impact between his vehicle and that of another was not essential for a violation of section 20001 of the Vehicle Code, so long as his action was an "efficient cause" of the accident. (*People* v. *Bammes* (1968) 265 Cal.App.2d 626, 631 [71 Cal.Rptr. 415]; cf. *People* v. *Green* (1950) 96 Cal.App.2d 283, 288 [215 P.2d 127]; *People* v. *Kinney* (1938) 28 Cal.App.2d 232, 237-239 [82 P.2d 203].) He may be liable if his conduct was connected with the accident in a "natural or logical manner." (*People* v. *Sell* (1950) 96 Cal.App.2d 521, 523 [215 P.2d 771].)

■ Defendant argues that his conduct was not "naturally or logically" connected with the accident unless he, in fact, was engaging in a speed contest with Donnie O'Neal or otherwise engaging in an exhibition of speed. He concedes that if he was racing or otherwise displaying speed there would be a sufficient connection between his conduct and the accident to support a finding that he was "involved in an accident" within the meaning of section 20001 of the Vehicle Code. Defendant asserts, however, that since the jury found him not guilty of either racing or displaying speed, the jury necessarily found that essential facts needed to convict him of felony hit-and-run driving were lacking. Therefore, defendant maintains that the guilty verdict on the felony hit-and-run driving charge should be set aside since it is inconsistent with the not guilty verdicts on the two speed charges.

■ The Legislature deals with this problem in section 954 of the Penal Code which provides in pertinent part: "An acquittal on one or more counts shall not be deemed an acquittal of any other count." This

[2]Section 20003 of the Vehicle Code provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his name, address, the registration number of the vehicle he is driving, the name of the owner, and upon request and if available exhibit his driver's license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit his license to any traffic or police officer at the scene of the accident and shall render to any person injured in the accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if such carrying is requested by the injured person."

Section 20004 of the Vehicle Code provides: "In the event of death of any person resulting from an accident, the driver of any vehicle involved after fulfilling the requirements of this division, and if there be no traffic or police officer at the scene of the accident to whom to give the information required by Section 20003, shall, without delay, report the accident to the nearest office of the Department of the California Highway Patrol or office of a duly authorized police authority and submit with the report the information required by section 20003."

statutory language means that each count must stand upon its own merit and be weighed separately in its disposition (*People* v. *Codina* (1947) 30 Cal.2d 356, 361 [181 P.2d 881]; *People* v. *De Priest* (1969) 2 Cal.App.3d 423, 431 [82 Cal.Rptr. 526]); a verdict of either conviction or acquittal upon one count has no bearing upon the verdict with respect to another count (*People* v. *Amick* (1942) 20 Cal.2d 247, 251-252 [125 P.2d 25]; *People* v. *Calpito* (1970) 9 Cal.App.3d 212, 219 [88 Cal.Rptr. 64]; see Witkin, Cal. Criminal Procedure (1963) Judgment and Attack in Trial Court, § 549, p. 560). In short, a verdict of conviction on one count which appears inconsistent with a verdict of acquittal on another count "... shall afford no basis for a reversal where the evidence is sufficient to support the conclusion that the defendant is guilty of the offense of which he stands convicted." (*In re Johnston* (1935) 3 Cal.2d 32, 36 [43 P.2d 541].)

However, there is a limited judicial exception to this rule where all of the essential elements of the crime of which the defendant was acquitted are identical to some or all of the essential elements of the crime of which he was convicted, and proof of the crime of which the defendant was acquitted is necessary to sustain a conviction of the crime of which the defendant was found guilty. (See *People* v. *Guerrero* (1943) 22 Cal.2d 183, 189 [137 P.2d 21]; *In re Johnston, supra,* 3 Cal.2d 32, 36; *People* v. *Hickman* (1939) 31 Cal.App.2d 4, 11 [87 P.2d 80]; cf. *People* v. *Wallace* (1947) 78 Cal.App.2d 726, 743 [178 P.2d 771]; see also *People* v. *Calpito, supra,* 9 Cal.App.3d 212, 219; *People* v. *Carner* (1953) 117 Cal.App.2d 362, 364 [255 P.2d 835].) This occurs, for example, where a conspiracy count alleges as the only overt act a crime set forth specifically in another count, and the defendant is found not guilty of the specific crime, but is found guilty of conspiracy; such an inconsistency invalidates the conspiracy conviction. (*People* v. *Robinson* (1954) 43 Cal.2d 132, 138 [271 P.2d 865]; *In re Johnston, supra,* 3 Cal.2d 32, 35-36; *Oliver* v. *Superior Court* (1928) 92 Cal.App. 94, 96-97 [267 P. 764]; see Witkin, Cal. Criminal Procedure (1963) Judgment and Attack in Trial Court, § 550, p. 561.)

■ Assuming defendant is correct in stating that his conviction of felony hit-and-run driving cannot be supported factually unless he was engaged either in a speed contest or an exhibition of speed, because he would not otherwise be "involved" in the accident, the verdicts of acquittal on the two speed offenses do not bring him within the narrow judicial exception to section 954 of the Penal Code mentioned above. The essential elements of engaging in a speed contest or engaging in an

exhibition of speed are not identical to the essential elements of felony hit-and-run driving. Such an inconsistency is permissible under section 954 of the Penal Code. (*People* v. *Greer* (1947) 30 Cal.2d 589, 599 [184 P.2d 512].)

## ADEQUACY OF INSTRUCTIONS

With respect to the issues of inadequate and misleading instructions, we note that in regard to the offense of felony hit-and-run driving the trial court instructed the jury in language identical to that of CALJIC Nos. 12.70, 12.73 and 12.74.[3]

---

[3]All references to CALJIC herein are to California Jury Instructions—Criminal, third edition 1970. CALJIC Nos. 12.70, 12.73 and 12.74 provide as follows and were read to the jury in the following order:

CALJIC No. 12.70: "The driver of any vehicle knowingly involved in an accident resulting in injury to any person other than himself, or the death of any person, is required to perform all the following duties:

"1. He shall immediately stop the vehicle at the scene of the accident;

"2. He shall give his name, address, the registration number of the vehicle he is driving, and the name of the owner of the vehicle to the person struck or the driver or occupants of any vehicle collided with, or to any traffic or police officer at the scene of the accident, and shall upon request, if available, exhibit his operator's or chauffeur's license to such persons or officer;

"3. He shall render reasonable assistance to any person injured in such accident, including the carrying or making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

"The willful failure of the driver of a vehicle involved in an accident resulting in injury or death to any person to perform any one of the foregoing duties is a public offense, but before the jurors may return a verdict of guilty, they not only must agree that the defendant failed to perform one or more of the foregoing duties but they also unanimously must agree on at least one particular duty that he failed to perform.

"The word 'knowingly' means that the driver of the vehicle involved knew that an accident had occurred and either knew that the accident resulted in injury to or death of a person or knew that it was of such a nature that it was probable that it resulted in injury or death.

"The word 'involved,' as used in this instruction, means being connected with an accident in a natural or logical manner. To be 'involved in an accident' does not require that a vehicle collide with another vehicle or a person."

CALJIC No. 12.73: "The duties imposed by the law upon the driver of a vehicle who knows that he just has been involved in an accident which has resulted in death or injury to any person, are not affected by the cause of, or the blame for, the accident. If such a driver willfully fails to perform any of those duties, he is guilty of a crime, whether the accident was caused by his own or another's negligence or by the concurrent negligence of two or more persons, or was unavoidable."

CALJIC No. 12.74: "The term 'immediately stop,' as used in these instructions, means that the driver of a vehicle, knowingly involved in an accident resulting in injury to or death of any person, must stop his vehicle at the scene of the accident as promptly as reasonably possible under the circumstances of the case."

■ Defendant argues that the instructions given on the offense of felony hit-and-run driving failed to inform the jury that an essential element of the crime was defendant's knowledge that he was involved in the accident. The special mental state required by the offense of felony hit-and-run driving is knowledge of the facts requiring a driver of a vehicle to stop the car and fulfill the requirements of sections 20003 and 20004 of the Vehicle Code. (*People* v. *Maggio* (1928) 90 Cal.App. 683, 689 [266 P. 813].) Such facts are threefold: (1) involvement (2) in an accident (3) resulting in the injury of another. ■ Accordingly, in order to convict a driver of a vehicle of felony hit-and-run driving it is essential that the driver knows that an accident has occurred (*Garabedian* v. *Superior Court* (1963) 59 Cal.2d 124, 127 [28 Cal.Rptr. 318, 378 P.2d 590]; *People* v. *Leutholtz* (1929) 102 Cal.App. 493, 498 [283 P. 292]), knows that he was involved in the accident (see Fricke & Alarcon, Cal. Criminal Law (10th ed. 1970) Failure to Stop, ch. 31, p. 404; Annot., Hit-and-Run—Accused's Knowledge (1969) 23 A.L.R.3d 497, 502, 505; cf. *Garabedian* v. *Superior Court, supra,* 59 Cal.2d 124, 127; *People* v. *Bammes, supra,* 265 Cal.App.2d 626, 633; *People* v. *Wallace* (1934) 2 Cal.App.2d 238, 244 [37 P.2d 1053]; see also *People* v. *Roche* (1942) 49 Cal.App.2d 459, 461, 462 [121 P.2d 865]), and knowingly leaves the scene of the accident either with knowledge that the accident resulted in injury or with knowledge that the accident was of such a nature that one would reasonably anticipate that the accident resulted in injury to another (*People* v. *Holford* (1965) 63 Cal.2d 74, 80 [45 Cal.Rptr. 167, 403 P.2d 423]; *People* v. *Rocovich* (1969) 269 Cal.App.2d 489, 493 [74 Cal.Rptr. 755]).

■ At no time was the jury instructed that it had to find defendant knew or was aware of his involvement in the accident. We realize that the jury was told that it was a public offense for a driver of any vehicle "knowingly involved" in any accident resulting in the injury or death of another to fail to fulfill any of the duties imposed by the law upon such a driver; however, the word "knowingly" was defined as meaning ". . . that the driver of the vehicle involved knew that an accident had occurred and either knew that the accident resulted in injury to or death of a person or knew that [the accident] was of such a nature that it was probable that [the accident] resulted in injury or death." We also realize that the jury was told that the duties imposed by law upon the driver of a vehicle who knows that he just has been involved in an accident which has resulted in the injury or death of another are not affected by any question of the driver's negligence. Yet, the jury never was told that a

driver's knowledge of his involvement in the accident was an essential element of the crime of felony hit-and-run driving.

■ It is fundamental that a trial judge has a *sua sponte* duty to instruct the jury on all of the essential elements of the offense actually charged. (*People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]; *People* v. *Sanchez* (1950) 35 Cal.2d 522, 528 [219 P.2d 9]; *People* v. *Peabody* (1975) 46 Cal.App.3d 43, 49 [119 Cal.Rptr. 780]; *People* v. *Iverson* (1972) 26 Cal.App.3d 598, 604-605 [102 Cal.Rptr. 913]; *People* v. *Bernhardt* (1963) 222 Cal.App.2d 567, 591 [35 Cal.Rptr. 401].) The failure to instruct on an essential element of the offense actually charged is error whenever there is any evidence deserving of any consideration from which the jury could have found in favor of the defendant on the omitted element; because such an error is a denial of the defendant's constitutional right to have the jury determine every material issue presented by the evidence, regardless of how overwhelming the evidence of guilt may be, the error cannot be cured by weighing the evidence and finding that it is not reasonably probable that a correctly instructed jury would have reached a result more favorable to the defendant. (See *People* v. *Thornton* (1974) 11 Cal.3d 738, 769, fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267] (maj. opn.) and pp. 771-775 (conc. and dis. opn., Mosk, J.); *People* v. *Phillips* (1966) 64 Cal.2d 574, 584-585 [51 Cal.Rptr. 225, 414 P.2d 353]; *People* v. *Conley* (1966) 64 Cal.2d 310, 318-320 [49 Cal.Rptr. 815, 411 P.2d 911]; cf. *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; see also *People* v. *Apodaca* (1978) 76 Cal.App.3d 479 [142 Cal.Rptr. 830].)

■ The testimony of defendant and his witnesses presented ample evidence deserving of consideration which would support a contention that defendant did not know or realize that he was involved in the accident in question. Accordingly, the instructional omission in the instant case can only be declared nonprejudicial if the factual question posed by the omitted instruction (i.e., whether defendant knew he was involved in the accident) was resolved adversely to defendant under other, properly given instructions. (*People* v. *Stewart* (1976) 16 Cal.3d 133, 141 [127 Cal.Rptr. 117, 544 P.2d 1317]; *People* v. *Mayberry* (1975) 15 Cal.3d 143, 158 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721.)

In the typical felony hit-and-run driving case, where there is an actual collision between the defendant's vehicle and that of another, one *might*

be able to say after conviction that an omitted instruction on the issue of the defendant's knowledge of his involvement in the accident would be nonprejudicial since that issue would have been resolved adversely to the defendant under a properly given instruction on the issue of the defendant's knowledge of the accident; but this is not such a case. Here, defendant's car did not collide with any other vehicle, and although defendant admittedly knew of the accident, it cannot be said that under the instructions given the jury necessarily resolved adversely to defendant the issue of defendant's subjective knowledge of his involvement in the accident. (See *People* v. *Stewart, supra,* 16 Cal.3d 133, 141-142.) The instructional omission in question cannot be deemed nonprejudicial.[4]

Since we find the matter disposed of by this failure to instruct on all of the essential elements of the crime, we do not consider defendant's contention with respect to the alleged inadequacy of CALJIC No. 12.73.

As to the disposition in this case, we recognize that subsequent to defendant's appeal from the order granting his probation, defendant violated his probation, the probation was revoked, judgment was pronounced and defendant was sentenced to state prison. (See, *ante,* fn. 1.) Pursuant to the authority vested in this court under the provisions of section 1260 of the Penal Code, we not only will reverse the order granting probation from which defendant appealed, but we also will set aside the subsequently entered judgment of conviction.[5]

---

[4]We observe that although it is encumbent upon the prosecution to show that a defendant knew he was involved in the accident, direct evidence of such knowledge is not necessary; it may be inferred from proof of the surrounding circumstances. (See *People* v. *Holford, supra,* 63 Cal 2d 74, 79-80; *People* v. *Rocovich, supra,* 269 Cal.App.2d 489, 493; *People* v. *Moody* (1949) 93 Cal.App.2d 66, 70 [208 P.2d 692]; *People* v. *Henry* (1937) 23 Cal.App.2d 155, 159-160 [72 P.2d 915]; *People* v. *De Vries* (1924) 69 Cal.App. 201, 204-205 [230 P. 982]; Fricke & Alarcon, Cal. Criminal Law (10th ed. 1970) Failure to Stop, ch. 31, p. 405.)

Additionally, in order to guarantee a jury's full consideration of all of the essential elements of the crime of felony hit-and-run driving, and still stay within the same general framework of CALJIC No. 12.70, it is advisable that the sixth paragraph of that instruction be modified to read as follows: "The word 'knowingly' means that the driver of the vehicle involved knew that an accident had occurred, knew that he was involved in the accident, and either knew that the accident resulted in injury to or death of a person or knew that the accident was of such a nature that it was probable that the accident resulted in injury or death."

[5]In relevant part, section 1260 of the Penal Code reads as follows: "The court may reverse, affirm, or modify a judgment or order appealed from, . . . and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order . . . ."

The order granting probation (erroneously described as a judgment in the notice of appeal) is reversed, and the subsequently entered judgment of conviction is hereby set aside.

**FRANSON, J.**—I concur in the foregoing opinion. I do so reluctantly because it is clear to me that defendant must have known that he was involved in the accident; the fact that he failed to stop at the scene shows a consciousness of guilt.

Nonetheless, the defense evidence showed that when defendant was one to two blocks from the scene of the accident he observed the police car and slowed down to stop. Under the instructions given by the court, the jury could have concluded that defendant was guilty of the charge of felony hit-and-run driving because he knew that an accident had occurred but without specifically finding that he knew that his conduct was a cause of the accident. The fact that the jury acquitted defendant of the charges of engaging in a speed contest and exhibition of speeding lends strong support to the possibility that the jury failed to make the requisite finding of defendant's awareness of his involvement in the accident. In fact, it is difficult to see how the jury concluded that the defendant was involved in the accident in the light of his acquittal of the other charges.

The dissent assumes that the jury inferred the knowledge requirement from the instructions "as a whole." The assumption falls in the face of the explicitly incorrect instruction of the meaning of the term "knowingly" contained in CALJIC No. 12.70. Where a *specific* instruction on an essential element of a crime is incorrect, the error cannot be cured by other generally correct instructions. (*People* v. *Westlake* (1899) 124 Cal. 452, 457 [57 P. 465]; see *People* v. *Valencia* (1872) 43 Cal. 552, 555-556; 18 Cal.Jur.3d (1975) Criminal Law, § 873, pp. 584-585.)

A defendant has a constitutional right to have the jury determine every material issue presented by the evidence. The failure to correctly instruct on such an issue cannot be cured by the presence of overwhelming evidence of guilt. (*People* v. *Stewart* (1976) 16 Cal.3d 133, 141 [127 Cal.Rptr. 117, 544 P.2d 1317]; *People* v. *Mayberry* (1975) 15 Cal.3d 143, 157 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)

We have no alternative but to reverse.

**BROWN (G. A.), P. J.**—I dissent.

This case is being reversed upon the tenuous ground that the jury was not instructed that to return a verdict of guilty it had to find defendant *knew* he was involved in the accident. There is no question that to find a person guilty of felony hit-and-run driving it is essential that the driver knows that he was involved in an accident. My disagreement comes with the conclusion of the principal opinion that the jury did not receive adequate instructions on this concept.

It is elemental that instructions must be viewed and construed in a common sense manner and as a whole, and as said in *Westover* v. *City of Los Angeles* (1941) 20 Cal.2d 635, 637 [128 P.2d 350], "[i]f they harmonize as a whole and fairly and accurately state the law, a reversal may not be had because of verbal inaccuracies, or because a separate instruction does not contain all of the elements which are to be gathered from the instructions as a whole." (See also *McShane* v. *Cleaver* (1966) 247 Cal.App.2d 260, 265-266 [55 Cal.Rptr. 427].) As CALJIC No. 1.01 states in pertinent part, the jurors ". . . are not to single out any certain sentence or any individual point or instruction and ignore the others," nor should this court. Further, "[s]ince jurors are presumed to possess ordinary intelligence and to be capable of understanding the meaning and use of words in their common and ordinary application, the trial judge is not required to define simple words and phrases employed in an instruction." (*Pobor* v. *Western Pac. R. R. Co.* (1961) 55 Cal.2d 314, 323 [11 Cal.Rptr. 106, 359 P.2d 474].)

Applying these principles to the case at hand, it is manifest that the word "know" is in common use and that every third grader knows what it means. To say the court had to specifically define it would be a type of esoteric pedantry with which the courts, dealing as they do with the practical affairs of men, should not trifle.

Thus the jury herein was instructed, "[t]he driver of any vehicle *knowingly involved* in an accident resulting in injury to any person . . . ." (CALJIC No. 12.70; italics added.) Further, the jurors were told that "[t]he word 'involved,' as used in this instruction, means being connected with an accident in a natural or logical manner." (CALJIC No. 12.70.) In addition, they were instructed in the language of CALJIC No. 12.73 that "[t]he duties imposed by the law upon the driver of a vehicle *who knows* that he just has been involved in an accident which has resulted in death or injury to any person, . . . ." (Italics added.)

It is inconceivable that any juror could have construed these instructions to mean anything other than that the driver must have been aware of his involvement.

It is true that in a separate paragraph the word "knowingly" was defined as meaning that the driver knows that an accident had happened and that it resulted in injury, omitting any reference to knowing of his own involvement. However, this deficiency was clearly made up in other instructions, for, as has been noted, the instructions must be construed in a common sense manner and "a reversal may not be had because of verbal inaccuracies, or because a separate instruction does not contain all of the elements which are to be gathered from the instructions as a whole." (*Westover* v. *City of Los Angeles, supra,* 20 Cal.2d at p. 637.)

I would affirm the judgment.